United States District Court
Southern District of Texas
**ENTERED**
March 27, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| **GLORIA FRIC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 6:21-CV-00042** |
| | § | |
| **ALLSTATE LIFE INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This is a state law breach of contract case.  In 1987, David and Gloria Fric bought a life insurance policy providing $200,000 coverage on Mr. Fric from Allstate Life Insurance Company ("Allstate").  Mrs. Fric is listed as the sole beneficiary.  About thirty years later, the Frics signed an automatic withdrawal agreement with Allstate under which Allstate would withdraw $436.75 from the Frics' personal bank account and apply it towards Mr. Fric's monthly payment for his life insurance premium.  Shortly thereafter, Mr. Fric's life insurance policy's premium increased, and the $436.75 per month Allstate withdrew from Mrs. Fric's bank account no longer covered the full premium amount. Due to this deficiency, Allstate notified the Frics by letter that Mr. Fric's policy went into its grace period and would soon be terminated unless the deficiency was paid.  The deficiency was not paid, and Allstate terminated the contract.  Ten months later, Mr. Fric passed away.  When Mrs. Fric initiated the claims process, Allstate denied her claim stating that Mr. Fric's policy had been terminated.  Mrs. Fric filed suit against Allstate in

state court, and Allstate removed the case to this Court alleging diversity jurisdiction. The Parties have filed cross motions for summary judgment related to breach of contract and extra-contractual claims.

Pending before the Court are the Parties' Cross Motions for Summary Judgment. (Dkt. No. 13); (Dkt. No. 14).  After reviewing the Motions, Responses, Replies, and the applicable law, the Court **GRANTS** Allstate's Motion for Summary Judgment, (Dkt. No. 14), **DENIES** Plaintiff's Motion for Summary Judgement, (Dkt. No. 13), and **DISMISSES WITH PREJUDICE** all claims in this case.

I.   **BACKGROUND**

The facts in this case are tragic but relatively simple.  In 1987, Mrs. Fric and her husband purchased a $200,000 universal life insurance policy from Allstate covering Mr. Fric. (Dkt. No. 1-3 at 3); (Dkt. No. 14 at 6–7).  Mrs. Fric was the sole beneficiary. (Dkt. No. 13 at 1); (Dkt. No. 14 at 6–7).  Under the policy, Mr. Fric was required to make monthly premium payments to keep the policy in force. (Dkt. No. 14 at 5).  Due to the nature of his policy, Mr. Fric's monthly premium payment increased as he aged.  (*Id.*).

In 2017, the Frics signed an automatic withdrawal agreement, known as an "Electronic Funds Transfer Agreement" or "EFTA."  (Dkt. No. 13 at 1–2).  Under this agreement, Allstate was authorized to automatically debit the policy's monthly premium payment from the Frics' bank account.  (*Id.*); (Dkt. No. 14-2 at 3).  The EFTA between the Frics and Allstate worked without issue for two years.

In October 2019, Allstate informed Mr. Fric by letter that the premium payments Allstate had received were insufficient to cover the policy. (Dkt. No. 14 at 5).  As a result

of this monetary deficiency, the policy went into its 60-day grace period.  (*Id*.).  To remedy this deficiency, Mr. Fric was required to make a $1,064.59 payment within the grace period or else the policy would terminate.  (*Id*.).  When Allstate did not receive this payment within the grace period, it terminated Mr. Fric's policy on December 17, 2019.  (*Id*.).  Ten months later, Mr. Fric passed away.  (*Id*.).

 Mrs. Fric made a claim on the policy.  (Dkt. No. 13 at 2).  When making the claim, Mrs. Fric learned that Allstate had stopped withdrawing premium amounts sufficient to keep the Fric's policy in effect despite the EFTA.  (*Id*.).  Mrs. Fric asserts that she had not received notice from Allstate that it had stopped withdrawing funds from her bank account to cover the monthly premium payments until she initiated the claims process.  (*Id*.).

Mrs. Fric brought suit in Texas state court asserting six causes of action under Texas law arising from Allstate's termination of her husband's life insurance policy.  (Dkt. No. 1-3).  Allstate removed the case to this Court.  (Dkt. No. 1).  Both Parties have moved for summary judgment.  (Dkt. No. 13); (Dkt. No. 14).  Mrs. Fric has moved for partial summary judgment on her breach of contract claim, and Allstate has moved for summary judgment on all six of Mrs. Fric's claims.  (*Id*.).

## II.    LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could

return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2253, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must then come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019). The nonmovant's burden "will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little*, 37 F.3d at 1075). But the district court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

4

## III.    DISCUSSION

Mrs. Fric moved for partial summary judgment solely on her breach of contract claim.  (Dkt. No. 13 at 1).  Allstate moved for summary judgment on all six of Mrs. Fric's claims.  (Dkt. No. 14 at 17–22).  The Parties' summary judgment briefs can be boiled down to three main issues.  First, is the EFTA a contract?  Second, if so, did Allstate breach the contract?  And third, if Allstate didn't breach the contract, what is the status of Mrs. Fric's five remaining extra-contractual claims?  The Court will address these three questions in turn.

### A.    Is The EFTA A Contract?

The Parties dispute whether the EFTA is a legally binding contract.  In Texas,[1] a legally binding contract requires:  "(1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba v. Ref-Chem, LP*, 892 F.3d 686, 689 (5th Cir. 2018) (citation omitted).  Additionally, "consideration is a fundamental element of any valid contract."  *In re Capco Energy, Inc.*, 669 F.3d 274, 280 (5th Cir. 2012) (quoting *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied)).

Allstate argues that the EFTA is not a legally binding contract because it lacks consideration.  (Dkt. No. 14 at 11).  More specifically, Allstate argues that the EFTA lacks

---

[1]    No Party disputes that Texas law applies.  "In diversity cases," the Fifth Circuit "appl[ies] the law of the forum state to determine which state's law applies." *Mumblow v. Monroe Broad., Inc.,* 401 F.3d 616, 620 (5th Cir. 2005) (citation omitted).

consideration because its language "did not impose any obligation on the Frics[.]"  (*Id.*); (Dkt. No. 16 at 8).   In response, Mrs. Fric argues that, because the EFTA authorizes Allstate to withdraw funds from her bank account, the EFTA is supported by consideration.  (Dkt. No. 15 at 2–4).  The Court agrees with Mrs. Fric.

In support of its argument that the EFTA is not a contract, Allstate directs the Court to two cases: *Amoako-Okyere v. Church of the Messiah United Methodist Church*, 2014 WL 12591569 (Ohio Com.Pl.) and *Hernandez v. Morales*, No. 7:13-CV-00234, 2014 WL 794201 (S.D. Tex. Feb. 25, 2014).  (Dkt. No. 14 at 11–12).  Both are distinguishable.

Unlike the present case, *Amoako-Okyere* discusses whether a legally binding contract includes a certain substantive provision, not whether the legally binding contract is adequately supported by consideration.  *Amoako-Okyere*, 2014 WL 12591569, at *4. *Amoako-Okyere* was a wrongful death case arising from the Church of Messiah's allegedly unlawful supervision of a church camp youth outing, which resulted in a death.  *Id.* at *1. There, the plaintiffs lost at trial and filed a motion under Ohio state law for a new trial. *See id.*  In rejecting the *Amoako-Okyere*'s plaintiff's motion for a new trial, the court held that, as a matter of law, the Church of Messiah had no duty to supervise the deceased because, generally speaking, "there is no duty to maintain supervision of an adult" under Ohio law.  *Id.* at *2.

 In an attempt to find that a duty of supervision existed between the deceased and the Church, the plaintiff in *Amoako-Okyere* argued that a parent/teen consent form signed between the parties created a contractual duty of supervision between the Church and the deceased's parents.  *Id.* at *4.  The court rejected this argument.  *Id.*  Instead, the Ohio

court found that, because the parent/teen consent form "*did not* contain any provision pertaining to supervision," the consent form "could not be the basis for liability against the Church []." *Id.* (emphasis in original). So, *Amoako-Okyere* was more about giving force to a substantive provision, rather than determining that no contract existed between the parties. *See id.*

Here, in arguing that the EFTA is not a contract, Allstate cites *Amoako-Okyere* for the proposition that an authorization or consent form is not a contract. (Dkt. No. 14 at 12) (citing *Amoako-Okyere*, 2014 WL 12591569, at *4). But Allstate cites *Amoako-Okyere* for more than it stands. *Amoako-Okyere* does not stand for the general proposition that an "authorization is not a contract" because it lacks consideration. *See Amoako-Okyere*, 2014 WL 12591569, at *4. *Amoako-Okyere* was instead more narrow and fact driven. *Id.* In holding that there was no consideration in the parent/teen consent form, the *Amoako-Okyere* court searched for a specific, substantive contractual "provision pertaining to [a duty of] supervision" and found none. *Id.* Despite Allstate's contention otherwise, *Amoako-Okyere*'s holding was not based upon the contracting parties' consideration or lack thereof. In fact, *Amoako-Okyere* does not use the word "consideration" in its opinion.

Allstate's other cited case is also unpersuasive. In *Hernandez*, the plaintiff sought recovery for medical expenses arising from a car accident, which occurred when the plaintiff was a minor. *Hernandez*, 2014 WL 794201 at *3. But the plaintiff in *Hernandez* had one major roadblock preventing her recovery: In Texas, "a cause of action to recover medical expenses incurred by a minor child through the date the child attains majority and for the loss of services and earnings of an unemancipated minor belongs to the child's

parents." *Id.* (quoting *Sarabia v. McNair,* 2010 WL 1427019, at *3 (Tex. App.—Fort Worth April 8, 2010, no pet.)).  So the plaintiff in *Hernandez* got creative, and in an attempt to establish a cause of action on her own behalf, the plaintiff (now past the age of majority) stated in an affidavit that she "hereby accept[s] full responsibility for [her] debts, and formally adopt[s] and ratif[ies] each and every contract or promise, oral or written, between [herself], or a relative, and every provider listed above[.]"  *Id.* at *4.   The *Hernandez* plaintiff argued that her new affidavit created a cause of action in her case because the affidavit created a new contract between her and the medical providers.  *Id.* at *3–4.  The *Hernandez* court disagreed stating that "[p]laintiff's new promise to pay the medical bills does not create any new obligation on the part of the medical providers," and, therefore, it is not a contract and does not create a cause of action for the plaintiff. *Id.* at *4.

Hernandez is distinguishable.   Unlike *Hernandez*, where the plaintiff's affidavit promising to "adopt and ratify" her debts failed to "create any new obligation on the part of the *medical providers*," *id.* at *3–4 (emphasis added), in this case, Section C of the EFTA authorizes Allstate to deduct $436.75 a month from Mrs. Fric's bank account for the purposes of applying that amount to Mr. Fric's life insurance premium.  (Dkt. No. 14-2 at 3).  Before Mrs. Fric signed the agreement, Allstate did not have the authority to transfer funds from Mrs. Fric's Bank of America account to pay the life insurance premium. Mrs. Fric had a pre-existing legal right to exclude Allstate from accessing her Bank of America account.  But the EFTA changed this.  By signing the agreement, Mrs. Fric gave up some autonomy over her bank account and allowed Allstate to have access to it so

that Allstate could withdraw $436.75 a month.  And Allstate repeatedly exercised its newfound power to access Mrs. Fric's bank account when it withdrew monthly funds until the policy was terminated.  The Court finds that Mrs. Fric's partial loss of autonomy over her bank account is adequate consideration to make the EFTA a contract.

### B.    DID ALLSTATE BREACH THE CONTRACT?

In Count One of her Complaint, Mrs. Fric asserts that Allstate breached the EFTA because Allstate did not withdraw sufficient funds from her bank account to pay the life insurance premium.  (Dkt. No. 1-3 at 4); (Dkt. No. 13 at 3).  Allstate contends that it did not breach the EFTA because, contrary to Mrs. Fric's argument, the EFTA only authorizes Allstate to withdraw "$436.75 per month" from Mrs. Fric's bank account to make payments towards Mr. Fric's life insurance premium.  (Dkt. No. 14 at 13).  The Court holds that the EFTA unambiguously authorized Allstate to withdraw only $436.75 per month without additional authorization from Mrs. Fric.

"In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument."  *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (citation omitted).  In determining this, "courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless."  *Id.* (citation omitted) (emphasis in original).  "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."  *Id.* (citation omitted).  And if two contractual provisions conflict, "the

9

specific trumps the general." *Millgard Corp. v. McKee/Mays*, 49 F.3d 1070, 1073 (5th Cir. 1995) (applying Texas law) (citation omitted).

Interpreting a contract can either be a question of law for the Court or a question of fact for a jury. *See Coker*, 650 S.W.2d at 393–94. If a contract "is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Id.* at 393 (citation omitted). If, however, "a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue." *Id.* at 394. Under Texas law, a contract "is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Id.* at 393 (citation omitted). Yet "[t]he mere fact that lawyers may disagree on the meaning of a contractual provision is not enough to constitute ambiguity." *Stinnett v. Colo. Interstate Gas Co.*, 227 F.3d 247, 254 (5th Cir. 2000) (footnote omitted). "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Coker*, 650 S.W.2d at 394 (citation omitted).

Mrs. Fric contends that Allstate had an obligation under the EFTA to withdraw enough funds each month to keep her husband's life insurance policy in effect. (Dkt. No. 13 at 3). Long ago, Texas courts recognized that some contracts expressly confer upon an insurance company a duty for the company to pay a deficiency on an insurance premium. *See, e.g., Shamblin v. Southland Life Ins. Co.*, 145 S.W.2d 272, 275 (Tex. Civ. App.—Galveston 1940, writ dism'd, judgm't cor.); *Huff v. Sw. Life Ins. Co.*, 95 S.W.2d 498, 501 (Tex. Civ.

App.—Eastland 1936, writ ref'd); *Pacific Mut. Life Ins. Co. of Cal. v. Thurman*, 126 Tex. 363,

89 S.W.2d 202, 203 (Comm'n App. 1936); *Southland Life Ins. Co. v. Hopkins*, 244 S.W. 989,

991 (Tex. Comm'n App. 1922); *Meserole v. Sw. Life Ins. Co.*, 203 S.W. 1161, 1163 (Tex. Civ.

App.—Amarillo 1918, no writ).

     In *Huff*, the court held that the following contractual language placed a duty upon

the insurance company to keep a policy in effect in the event of a deficiency:

> Automatic Premium Loans.--If at any time after the expiration of the second policy year and while this policy is in full force, any premium or installment of premium shall not be paid or settled in any other way within the time allowed for its payment, *the company*, unless otherwise instructed in writing by the insured, *will forthwith advance the amount of such premium or installment of premium*, with interest thereon at the rate of 6% per annum, payable in advance, *as a loan against this policy*, provided the loan value hereof shall be sufficient to secure such loan with any other existing indebtedness and interest in advance on the total debt until the next premium or installment thereof becomes due. Premiums falling due thereafter will in like manner be so advanced and paid by the company and this policy so continued from time to time as long as the loan value hereof, after deducting all indebtedness and interest, is sufficient to pay a quarterly premium on this policy.

95 S.W.2d at 499 (emphasis added).  Another example comes from *Shamblin*:

> Automatic Premium Loans. After this policy shall have been continued in force for three full years, any time thereafter upon failure of the Insured to pay the premium or any installment thereof when due or within the grace period allowed for its payment, the Company will advance a loan against this policy to pay such premium or any installment thereof, provided the cash value hereof shall be sufficient to secure such loan and all other indebtedness against the policy and interest in advance at the rate of six per cent per annum on the total debt to the next premium due date. The policy will thus be continued in force as long as the cash value

> thereof is sufficient to secure the advance of as much as one
> quarterly premium and all existing indebtedness with
> interest.

*Shamblin*, 145 S.W.2d at 273.

But unlike the contracts in *Huff* and *Shamblin*, the EFTA here did not obligate Allstate to pay a possible deficiency in Mr. Fric's life insurance premiums. Instead, many sections of the EFTA specifically limit Allstate's authority to only that which is expressly authorized. For instance, Section B limits Allstate's authority to Mrs. Fric's bank account to "the first installment of [Mr. Fric's] new policy" and future "authorization[s]" must be "initiate[d]" by Mrs. Fric "in the amounts" she "specif[ies]." (Dkt. No. 14-2 at 2).

Section C is an agreement between Mrs. Fric and Allstate allowing Allstate to automatically withdraw $436.75 from Mrs. Fric's bank account for the purpose of paying the premium on Mr. Fric's life insurance policy. (*Id*. at 3). The text of Section C reads:

> [The Frics] authorize [Allstate] and its affiliates and the
> financial institution designated to deduct payments from [the
> Fric's] account through electronic funds transfer. [The Frics]
> further authorize [Allstate] to make changes to [the Fric's]
> draft date; premium amount; mode frequency; and/or initiate
> or change a loan repayment amount upon [the Fric's] written,
> verbal, or electronic request(s). All such requests will be
> confirmed by [Allstate] in writing.
>
> Recurring Payment Amount: $436.75
>
> Payment Frequency: Monthly

(*Id*.). Section C's text expressly limits Allstate's authority to $436.75. (*Id*.). Mrs. Fric listed $436.75 as the payment amount. (*Id*.). Mrs. Fric listed the frequency as monthly. (*Id*.). And any change to either the amount or payment frequency had to be requested by Mrs. Fric and "confirmed by [Allstate] in writing" to take effect." (*Id*.). Unlike the

contracts in in *Huff* and *Shamblin*, where each contract gave the duty of "advancements" to the insurance company in the event of a deficiency, the EFTA in this case contains no similar language.  Therefore, Allstate did not breach Section C of the EFTA by failing to withdraw more than the listed amount of $436.75.

The EFTA's other provision at issue in this case, Section D, also does not give Allstate the authorization to pay a premium deficiency.  Section D grants an Allstate agent the authority to make certain changes to some of the items listed in the EFTA.  The text of Section D provides:

> [The Frics] give my acting agent the authorization to make the following EFT changes: draft date; premium amount; mode frequency and initiate or change loan repayment. Any such request will be confirmed by The Company in writing.

(*Id*.).  While Section D does give Allstate the power, through its agent, to request certain changes to the EFTA, Section D does not give Allstate power to make changes because "any such *request*" by Mrs. Fric must "be *confirmed* by [Allstate] in writing."   (*Id*.) (emphasis added).  This contractual language, where Allstate must confirm its request to make changes to the EFTA, is markedly different from the language in the contract of *Huff*, which allowed for that insurance company to advance payment in the event of a deficiency unless otherwise instructed in writing:

> If at any time after the expiration of the second policy year and while this policy is in full force, any premium or installment of premium shall not be paid or settled in any other way within the time allowed for its payment, the company, *unless otherwise instructed in writing by the insured*, will forthwith advance the amount of such premium or installment of premium,

*Huff*, 95 S.W.2d at 499 (emphasis added).  Therefore, Allstate did not breach Section D of the EFTA by failing to withdraw more than the listed amount of $436.75.

For these reasons, the Court dismisses Mrs. Fric's breach of contract claim, (Dkt. No. 1-3 at 4).

### C.   WHAT IS THE STATUS OF MRS. FRIC'S EXTRA-CONTRACTUAL CLAIMS?

In addition to her breach of contract claim, Mrs. Fric pled a deceptive trade practice claim, (Count Two), an unfair insurance practices claim, (Count Three), a breach of the duty of good faith and fair dealing claim, (Count Four), a fraud and misrepresentation claim, (Count Five), and a promissory estoppel claim, (Count Six).  (*Id.* at 4–5).

### 1.   Deceptive Trade Practices, Unfair Insurance Practices, and Duty of Good Faith and Fair Dealing Claims

Counts Two, Three, and Four of Mrs. Fric's Complaint all fall under the same analytical framework.  *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488–89 (Tex. 2018) (analyzing a plaintiff's extra-contractual, statutory and common law claims under one framework); *see also Moore v. Allstate Tex. Lloyd's*, 742 Fed. App'x 815, 819 (5th Cir. 2018) (per curiam) (same).  In Count Two, Mrs. Fric alleges that Allstate engaged in false, misleading, or deceptive acts in violation of Texas's Deceptive Trade Practices Act ("DTPA").  (Dkt. No. 1-3 at 4) (citing Tex. Bus. & Com. Code §§ 17.50(a)(1)–(4)).  In Count Three, Mrs. Fric pleads that Allstate violated Chapter 541 of the Texas Insurance Code. (*Id.*).  And in Count 4, Mrs. Fric pleads that Allstate violated the common law duty of good faith and fair dealing.  (*Id.* at 4–5).  Allstate argues that Mrs. Fric cannot recover under either the DTPA, the insurance code, or under a common law duty of good faith

because Allstate did not breach the insurance contract or EFTA.  (Dkt. No. 14 at 17–20).

The Court agrees with Allstate.

Under Texas law, the relationship between a plaintiff's breach of contract claim

and extra-contractual claims is complicated.  *See, e.g.*, *Republic Ins. Co. v. Stoker*, 903 S.W.2d

338, 341 (Tex. 1995); *Menchaca*, 545 S.W.3d at 479.  As a general matter, "there can be no

claim for bad faith when an insurer has promptly denied a claim that is in fact not

covered."  *Stoker*, 903 S.W.2d at 341.  In *Menchaca*, the Supreme Court of Texas outlined

five guideposts to assist lower courts in determining whether a plaintiff's extra-

contractual claims survive in the event the plaintiff's breach of contract claim fails:

> First, as a general rule, an insured cannot recover policy
> benefits as damages for an insurer's statutory violation if the
> policy does not provide the insured a right to receive those
> benefits. Second, an insured who establishes a right to receive
> benefits under the insurance policy can recover those benefits
> as actual damages under the Insurance Code if the insurer's
> statutory violation causes the loss of the benefits. Third, even
> if the insured cannot establish a present contractual right to
> policy benefits, the insured can recover benefits as actual
> damages under the Insurance Code if the insurer's statutory
> violation caused the insured to lose that contractual right.
> Fourth, if an insurer's statutory violation causes an injury
> independent of the loss of policy benefits, the insured may
> recover damages for that injury even if the policy does not
> grant the insured a right to benefits. And fifth, an insured
> cannot recover *any* damages based on an insurer's statutory
> violation if the insured had no right to receive benefits under
> the policy and sustained no injury independent of a right to
> benefits.

*Menchaca*, 545 S.W.3d at 489 (emphasis in original).

This case implicates *Menchaca*'s third, fourth, and fifth considerations.  Those

considerations stem from the independent injury rule, which allows an insured to recover

damages from an extra-contractual claim even if the insured was not entitled to benefits under the contract.  *Id.* at 499.  The independent injury rule analysis "has two aspects." *Id.*  "The first is that, if an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits."  *Id.* (citation omitted).  "The second aspect of the independent-injury rule is that an insurer's statutory violation does not permit the insured to recover *any* damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits." *Id.* at 500 (emphasis in original).  An insured's "injury is not 'independent' from the insured's right to receive policy benefits if the injury 'flows' or 'stems' from the denial of that right."  *Id.*; *see also Moore*, 742 Fed. App'x at 819 (applying *Menchaca*'s framework similarly).

The Supreme Court of Texas has emphasized just how rare a successful independent injury claim is.  *Menchaca*, 545 S.W.3d at 500 ("Our reference . . . to 'the possibility' that a statutory violation could cause an independent injury suggested that a successful independent-injury claim would be rare, and *we in fact have yet to encounter one.*") (emphasis added).  And in this case, Mrs. Fric's own pleading points to why her injury is not independent of her breach of contract claim.  Mrs. Fric pleads that "Defendant's actions *caused* the policy to lapse."  (Dkt. No. 15 at 11) (emphasis in original). Mrs. Fric describes Defendant's actions to be a "tortious[] eliminat[ion] of its contractual obligations," including the contractual obligation "authorizing its agent to increase premium amounts[.]"    (*Id.* at 12) (citing EFTA).    But this contractual obligation

supposedly arises from the EFTA, specifically Sections C and D.  Had the Court ruled that Allstate had an obligation under the EFTA to pay any deficiencies, Mrs. Fric would not have suffered an injury.  Thus, her injury is not independent of her breach of contract claim because her bad faith claims "flow" from her breach of contract claim.

Therefore, the Court dismisses with prejudice Counts Two, Three, and Four of Mrs. Fric's Complaint made under the DTPA, Chapter 541 of the Texas Insurance Code, and the duty of good faith and fair dealing, (Dkt. No. 1-3 at 4–5).  *See Menchaca*, 545 S.W.3d at 489 (analyzing a plaintiff's extra-contractual, statutory and common law claims under one framework); *see also Moore*, 742 Fed. App'x at 819 (same).

### 2.    Fraud and Misrepresentation Claim

In Count Five of her Complaint, Mrs. Fric alleges that Allstate committed fraud. (Dkt. No. 1-3 at 5).  In seeking summary judgment, Allstate asserts that Mrs. Fric has not offered enough evidence at the summary judgment stage for her claim to survive.  (Dkt. No. 14 at 20–21).  In reply, Mrs. Fric cites to her declaration, (Dkt. No. 15-1 at 1–2), and the EFTA, (*id.* at 31–32), as evidence supporting her fraud claim.  (Dkt. No. 15 at 17–19). The Court agrees with Allstate.

"Under Texas law, the elements of a fraud cause of action are: (1) a material representation; (2) it was false when made; (3) the speaker either knew it was false or asserted it without knowledge of its truth; (4) the speaker intended that it be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result."  *Malacara v. Garber*, 353 F.3d 393, 403–04 (5th Cir. 2003) (applying Texas law) (citation omitted).  As the non-movant, Mrs. Fric "must submit or identify evidence in the record to show the

17

existence of a genuine issue of material fact as to each element of the cause of action." *Id.* at 404 (citation omitted).  Mrs. Fric has failed to do so.

Mrs. Fric's Response point to two pieces of evidence asserting that Allstate has engaged in fraud: (1) Mrs. Fric's declaration and (2) the EFTA.  (Dkt. No. 15 at 17–19). First, Mrs. Fric's declaration does not contain any specific allegation of fraud.  "To survive summary judgment, [a plaintiff] must present sufficient evidence to create a genuine issue of material fact as to each element of fraud." *Cordero v. Avon Prods., Inc.*, 629 Fed. App'x 620, 625 (5th Cir. 2015) (per curiam) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552).  Generally speaking, without evidence as to who, what, when, and where any fraud took place, Mrs. Fric's fraud claim does not survive Allstate's summary judgment motion. As applied specifically to the elements of fraud under Texas law, Mrs. Fric has not provided evidence of who (1) "made a material representation," (2) the "fals[ity]" of the statement, (3) whether "the speaker either knew it was false or asserted it without knowledge of its truth," or (4) whether "the speaker intended that it be acted upon." *Malacara*, 353 F.3d at 403–04.

Second, Mrs. Fric bases her fraud claim on the express provisions of the EFTA.  In Texas, one cannot recover under a theory of fraud if the "fraud claim is duplicative of a breach of contract claim[.]" *Gay v. City of Wichita Falls*, 457 S.W.3d 499, 509 (Tex. App.— El Paso 2014, no pet.).  To determine whether a party's fraud and breach of contract claims are duplicative, the court determines "[i]f the defendant's conduct would give rise to liability only because it breaches the parties' agreement." *Id.; see also Farah v. Mafrige &*

18

*Kormanik, P.C.*, 927 S.W.2d 663, 674 (Tex. App.—Houston [1st Dist.] 1996, no writ) (citation omitted).

Here, Mrs. Fric's fraud and breach of contract claims are duplicative. Mrs. Fric asserts that Allstate has engaged in fraud because it had a duty under the EFTA to "deduct premiums and other charges and fees" even if those premiums increase. (Dkt. No. 15 at 18) (citing EFTA). The Court has already held that Allstate had no such obligation under the EFTA. *See supra* at Section III(B). Mrs. Fric's theory of fraud is contrary to the terms of the agreement. Therefore, the Court dismisses Count Five, Mrs. Fric's fraud claim, (Dkt. No.1-3 at 5).

### 3.   **Promissory Estoppel Claim**

The Parties also dispute whether Mrs. Fric can recover under promissory estoppel theory. In Count Six of her Complaint, Mrs. Fric asserts that she can recover under the theory of promissory estoppel because (1) Allstate promised they would withdraw enough funds to keep her husband's life insurance policy in effect, (2) Allstate knew she would rely on this promise, and (3) and she was harmed by her reliance when her husband's life insurance policy lapsed. (Dkt. No. 1-3 at 5). In seeking summary judgment, Allstate argues that the only promise Allstate made to Mrs. Fric was to withdraw $436.75 per month from her bank account and apply that to Mr. Fric's insurance premium pursuant to the EFTA. (Dkt. No. 14 at 21–22). And Allstate argues that because it kept this promise, Mrs. Fric cannot recover under a theory of promissory estoppel. *Id.* The Court agrees with Allstate.

In Texas, promissory estoppel is a three-element test: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.25 (Tex. 2002) (citation omitted).[2]  Mrs. Fric has not provided evidence that a representative of Allstate separately promised or represented, either orally or by writing, that Allstate had a duty under the EFTA to pay a deficiency on Mr. Fric's premium in the event a deficiency arose.  (*See* Dkt. No. 1-3 at 5); (Dkt. No. 15 at 20–21).  Instead, Mrs. Fric argues that the EFTA's language itself is the basis for Allstate's promise.  (Dkt. No. 15 at 21–21) ("It was foreseeable to Defendant that Plaintiff would rely on the language in the EFTA.").

But Mrs. Fric cannot recover on her promissory estoppel claim because her asserted promise stems from the contractual language of the EFTA.  "Under Texas law, a contract comprising the disputed promise precludes recovery under promissory estoppel."  *Jhaver v. Zapata Off-Shore Co.*, 903 F.2d 381, 385 (5th Cir. 1990) (footnote omitted).  Here, the EFTA does not place a duty on Allstate to pay a deficiency in Mrs. Fric's premiums if such a deficiency arises.  *See supra* at Section III(B).  Therefore, Mrs. Fric cannot recover on her promissory estoppel claim because Allstate made no

---

[2]    The Fifth Circuit has interpreted Texas law as having four elements for promissory estoppel: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promise to his detriment . . . [and (4)] a definite finding that injustice can be avoided only by the enforcement of the promise."  *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 864 (5th Cir. 1999) (applying Texas law) (alterations in original) (citation omitted).  The Court need not examine whether promissory estoppel is a three- or four-element test under Texas law to resolve this dispute.

further promise to Mrs. Fric in the EFTA outside of a promise to withdraw $436.75 a month from her bank account and apply that money to Mr. Fric's life insurance premium.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment, (Dkt. No. 14), **DENIES** Plaintiff's Partial Motion for Summary Judgment, (Dkt. No. 13), and **DISMISSES WITH PREJUDICE** all claims in this case, (Dkt. No. 1-3).

It is SO ORDERED.

Signed on March 26, 2023.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**